Good morning. May it please the court. James Fields here on behalf of Appellant Baltimore Police Department Deputy Major Daniel A. Lioi. As your honors know, we're here on the appeal of a denial of a motion to dismiss filed on behalf of Deputy Major Lioi on the basis of qualified immunity. Your honors obviously are aware of the circumstances of this matter, the underlying facts being that Deputy Major Lioi was a Deputy Major of the Police Department when an individual, Cleveland Williams, arrived to turn himself in on a domestic relations warrant that had been lodged by his wife. He did not serve that warrant at the time. The individual remained free. There was arrangement to have him turn himself in. In the interim period between the appointed time to turn himself in and the time that he appeared at the police station, Mr. Williams murdered his wife. It is plaintiff's contention in this case that Veronica Williams, the plaintiff's decedent, had a constitutional right to the arrest of Cleveland Williams, which would have, in their view, prevented that murder from taking place. As stated in our brief, Deputy Major Lioi contends and the case law supports, in Castle Rock particularly, the Supreme Court case of Castle Rock, makes clear that there is no constitutional right to the arrest of a third party. That is precisely what the plaintiffs have alleged in their complaint. We've identified by paragraph and line what their allegations are. The precise contention is if Deputy Major Lioi had not somehow manipulated the process of effectuating the arrest warrant upon Cleveland Williams, Veronica Williams would still be alive today. What they're saying is the act that did not take place, which should have taken place, which we are complaining that harmed Veronica Williams, was the arrest of Cleveland Williams. Town of Castle Rock clearly states that the arrest of an individual, a third party, is a discretionary, the service of an arrest warrant is a discretionary act. That has long been held, that is how police departments work, and the case law supports that. The plaintiff has not demonstrated and not provided any basis, any legal authority that says the Baltimore Police Department had an obligation to arrest him at the time, when and where the plaintiffs say the police should have. This is not a case where it was a warrant that they just didn't get around to executing, or they had a whole big stack and this one was down at the bottom. This is an affirmative action by a police officer to protect a body, and he even hid the warrant in the desk drawer, didn't he? That's the allegation, Your Honor. But here we are. Let's go to the essence of what Castle Rock says. Castle Rock says it is within the discretion of an arrest warrant to be issued, and it is within the discretion of the police department to effectuate it, to execute it. The manner in which it may be executed is totally left to the discretion of the police department. The court said that in Castle Rock as it pertained to the facts of that case when it was a warrant that somehow became embedded. Did they have the discretion to elect not to execute it at all? They have the discretion of the manner and method by which to execute it. And in this circumstance, what plaintiff is saying is the manner and method which the police chose in this situation was the turning of oneself in at an appointed time. Well, you can't do that because he was there. You had the obligation to immediately arrest immediately. There are mechanisms by which the police departments all across the country, but including Baltimore Police Department, do effectuate their arrest warrants. In fact, what's significant in this case, the language of the arrest statute in Maryland is less mandatory than the facts of any case law that the plaintiffs have put forward. It says they may arrest. It says service of arrest warrants, a police officer may arrest a person throughout the state of Maryland without limitation as to jurisdiction if a warrant has been issued against the person. So if a warrant has been issued, the statute in and of itself says the officer may effectuate that. It goes on to say a warrant shall be executed by the arrest of the defendant. Now, that only says how the warrant is to be executed. You must arrest them. You can't then take a summons and mail it to them. You have to arrest them, but it doesn't say when and how you do that. It is perfectly acceptable to allow one to turn himself in under certain circumstances. But this is not solely a when and how case, is it? Well, it is, Your Honor, and here's why. Because what the plaintiffs are suggesting and what they're alleging, frankly, is that this is what Deputy Major Leoie has done. If he says, I'm not going to arrest you today because you showed up and I don't have the warrant, the contention that Deputy Major Leoie's assertion that I don't have the warrant somehow puts Veronica Williams in greater danger. Here's a way to look at this. Counsel, you've gone beyond the pleading in paragraph 21 when you insert the fact that Mr. Leoie didn't have the warrant. That's not in their allegation. Their allegation is that he had the warrant and falsely said he did not. And at motion to dismiss stage, that's what we have to go with. And let's take that. The fact that, and let's take the allegation to be true. If Deputy Major Leoie falsely says, I don't have the warrant and I'm not going to arrest you right now, it doesn't negate the fact and it doesn't change the fact that the manner and methodology under which the police department may execute an arrest warrant is still within the discretion of the police department. No, but that's more than when and how. When, it would be a delay. But how would be, for example, how you actually effectuated the arrest. This right here, he fabricated a story that I don't have it. Paul, let me, that's a fabrication. That's not when and how. If Deputy Major Leoie had said nothing, and here's a way to really look at the allegation and what the plaintiffs are alleging. If he had said nothing. And just left it on his desk. And did not effectuate that arrest warrant. Then that's a win. That's a win on the case. But the effect is the same as it pertains to Veronica Williams' alleged danger that Deputy Major Leoie enhanced. But the causation in terms of, beyond just the protection of when and how discretion. When he insinuates himself affirmatively and fabricated a story to help his friend. And I hope, I know this is no paradigm for how it normally is done. That's beyond that, those cases you're talking about. This is not an omission case solely. He's actively engaged in fraud. Well, Your Honor, the contention by the defendant is he cannot be actively engaged in a fraud if the law. Under Castle Rock and the statutory scheme in Maryland. Allows the discretion and the mechanism by which one may arrest, effectuate an arrest warrant. Resides within the police. If it resides within Deputy Leoie. Permits a police officer to affirmatively refuse on fraudulent grounds to serve an arrest warrant. The Maryland law leaves it within the discretion to effectuate the arrest warrant. Period. It does not. Even for malicious and illegal purposes. The failure to effect the arrest warrant could not give rise to liability. A failure to effect the arrest warrant could not give rise to liability. Under any of those circumstances. Correct. Now, the plaintiff's assertion, again, is simply that it's not effectuated. It's not effectuated. Now, again, the reason I suggest that Your Honors look at it in the context where we can really see what the allegation here is. Of saying nothing. Doing nothing. And the arrest warrant stays on the table, under the desk, wherever it may be. What we're saying is and what results is no greater protection for Veronica Williams. The allegation of the affirmative act by Deputy Major Leoie. Which we contend is imbued within his discretion. Whatever that is. Whatever he does or doesn't do. The focus and the point of somehow effectuating that arrest warrant. If he chooses to do it. Because the law provides him that opportunity and discretion. What happens if the allegation in paragraph 21 was that Mr. Williams paid Mr. Leoie $1,000 not to effectuate the arrest warrant? Do you still say Maryland law would not impose liability on that? I think Maryland law might have some other components. Obviously there would be other components. But for purposes of qualified immunity and the state actor exemption, you're saying that Maryland law would exempt him from liability? Our contention is Maryland law exempts the police from liability for the manner and methodology in which an arrest warrant is effectuated or not. Period. And Hobbs Act violations notwithstanding. Well again, there may be other remedies. But it's not a constitutional violation of a right which you don't have. In other words, you said in Baltimore the police officer said, you know, I'm not going to serve any warrant if a Chinese American is involved. I'm just not going to serve it. I don't like Chinese people. I'm not going to serve it. Well again. They'll be fine. There will be no recourse. There will be no constitutional violation against that officer for the failure to effectuate an arrest warrant. For the particular failure to effectuate an arrest warrant under the due process clause. If he's acting within discretion. Equal protection of the 14th Amendment is not implicated at all, is it? In your example, your honor, it is. The allegation here is a statement by Deputy Major Leoe that the arrest warrant is not here. Now, again, taking that to be true. Discretion is paramount to the police to effectuate the warrant. Again, if we had no... You're right on say paragraphs 20 and 21 of the complaint. It's, what do you call it, benign neglect or exemption from liability, whatever you want to call it. How about paragraph 23? The allegation of conspiracy, which appears to be a very direct allegation of commission on the part of the defendant. Of taking affirmative acts to evade the law. That's what they've alleged there. Why doesn't that... Well, let's look at what the affirmative acts are. Taking affirmative acts to acts of commission. And this is where the Pender Court cautions the courts to draw a bright line and be wary of article pleading that turns clearly omission cases into affirmative acts. Now, what we have and what the plaintiffs have alleged are several text messages. One text message being in response to a question from... We're on the motion to dismiss now, so we're pretty limited in what we can look at. But if you look at the language of paragraph 23, they've pled that Leoli intentionally and maliciously conspired to violate the law through worse acts and deeds to allow Williams to remain free. Why doesn't that make him, by the pleading, a state actor? In the context of the period of time that this allegation is talking about, we're talking about seven days at most, Deputy Leoli and any member of the police department can agree with one who will be arrested, one who has a warrant out with them, to turn himself in at a particular time. So he can agree for a period of time to allow this person not to be captured, not to be taken into custody. The plaintiff wants to couch that in terms of a conspiracy. Yes, it is an agreement, and the defendants don't dispute that there is an agreement as between Major Leoli and this individual, Cleveland Williams, to be taken into custody. And frankly, as a matter of fact, yes, that period of time, there is an agreement that he will not be captured. The assertion of evading capture, well, if you're agreeing that I'm not going to arrest you, and you're not going to come in until a certain date to be remanded into custody, that's what it is. So that in and of itself is not nefarious. It is not illegal. It is an agreement, and it is within the precise discretion that Deputy Leoli had in order to effectuate the arrest of the warrant, or the arrest of Mr. Williams in the service of the warrant. So we're still not taking his actions beyond what the premise of the police department allows him to do. We're not taking it beyond the discretion that he has to agree with an individual. Because what were we talking about? You were talking about involving the police power and the police function. What do I forego? I forego sending someone out on the street to arrest someone, knocking on doors every day to find him. I can make an agreement for him to come back and do it another time. I see that my red light is on. I'm going to reserve the time for a rebuttal. Thank you, Mr. Fields. Mr. Hansel? Good morning. May it please the court, my name is Kerry Hansel. It's my great pleasure to represent the family of Veronica Williams. I listened to counsel's argument, and it's remarkable that he'd refer to some of the case law that he does. For instance, Castle Rock seemed to be the backbone of much of his issues. In Castle Rock, there was no affirmative action at all. It was similar to Judge Faber's example of the warrant being on the bottom of the stack, the person simply hadn't been served yet, and there was absolutely nothing more. That case is devoid of anything else, any of the issues that we have here. Moreover, in Castle Rock, the whereabouts of the individual to be arrested were unknown. That's at page 762 of the opinion, and the court relies heavily on that. In this case, the man came to the police station, and they falsely claimed they couldn't find a warrant which is available in every police computer, including in squad cars in the jurisdiction in question. So Castle Rock's completely distinguishable because it involves no affirmative acts. The affirmative acts here are extensive. The first one is, this warrant is supposed to go to a warrant service unit, people trained and specialized in serving these things, whose job it is to serve them. And also, one of the reasons this unit exists is to avoid what happened here, because this man has some involvement in the community, knows officers, and the warrant's supposed to go to people who are charged with serving it. It's instead diverted, and this is in paragraph 19 of the complaint, it's instead diverted by Loy and others to their unit, so they can protect their friend. I'm sorry, you go ahead. My question is just, I have trouble with the clearly established right here. What's your best case, if you have one, that the state created danger exception as the clearly established constitutional right? Your Honor, it had been mentioned as of the time of this case, in more than 20 cases, for more than 20 years. So it's very clearly established. Well, on the facts of this case, facts similar to this case? This court said, I think yes, and I'll answer that in a moment, but more importantly, this court said in Pender, it's important not to be over-specific. There need not be a prior case directly on or with the facts. So I think my first answer would be to suggest very respectfully, that under Pender, that's maybe not the correct inquiry. But if we use that inquiry, in the Kennedy case in the Ninth Circuit, the Currier case in the Tenth Circuit, both of those found that the state action doctrine, exactly as we suggested in our brief, and exactly as the court found below, were clearly established. Those cases were in 06 and 01. These events occurred in 2008. So at least two circuits had found this clearly established. What were the facts of those cases? Well, let me suggest some that have more similar facts, in which this same test was applied. Pulliam is a Maryland district case from 02. The police drove an abusive husband home to the house without more. And here we have much more than that. Okay, here we have the diversion of the warrant. Here we have the false claim that it was lost. Here we also have advice the police gave to Cleveland Williams about how to remain free. Do X, Y, and Z, or you'll, quote, force our hand to serve the warrant. So they're telling him, actively advising him, here is how you can remain free. Well, driving somebody home is about as affirmative of an act as you can get. But it doesn't... You could argue that that's a much more severe case than this one could. Well, then I would suggest there's the Sloan case from 04, out of the Southern District of West Virginia. That involved an interrogation. Police interrogated a man, and that was it. There was no allegation that it was too long, that he wasn't fed, that he didn't sleep, that any of the usual constitutional concerns... That case? It's Sloan, Southern District of West Virginia, 2004. There's a police interrogation. The person then goes home... One of my brother's judges in that district wrote it. I didn't write that one, did I? No, you didn't, your honor. The person in that case goes home and commits suicide. And the court found that the state action doctrine is implicated in the mere interrogation, even though the interrogation itself, within its confines, was not unconstitutional. Another example is the Okun case, out of the Second Circuit from 2009. There, police are... And this is one that I think best directly answers your question, together with the Freeman case, and I'll talk to both of them. The Okun case out of the Second Circuit in 09 involves police who didn't intervene to stop an abuser, very similar to this case. And all they did was nothing in that case. The only facts above their failure to intervene that were implicated in Okun is that the police had a clear friendship with the subject of the warrant. So all they said in that case was, that was the case that counsel posited, or I believe the court posited. What if the warrant remained on the table? And that was all. And add one more fact. The police are friends with the subject of the warrant. Now that's Okun. Here we have that they're friends, that they divert the warrant, that they come up with false reasons not to serve it, that they advise him how to remain free. Three days before the murder, the murderer writes to the officer, there's a method to my madness, and the officer writes back, that's what I'm afraid of. The day of the murder, the officer knows where he is, where he's going, and is advising him how not to get arrested. And he says... Was that a female before the district court at the time of this decision? It was not, Your Honor. By agreement with counsel, though, it is in the record before this court, because I don't think either one of us wanted to... I think we both wanted the court to have as full a record as possible. It hadn't been produced to me as of the district court's... By agreement by counsel, that we could consider it even though the district court did not... The agreement was to put it in the record, Your Honor. I don't want to overstate it, because I don't think we got any more explicit than that. But in my mind, when you put it in the record, this court can consider it, and it is at the end of the record extract, in the 190s, 190 to the end. Just without objection? Yes, in the record extract. And counsel, of course, prepared the record extract. And I don't think he would suggest that the court shouldn't consider it. But our precise agreement was that it would go in the extract. We'll ask when it comes back. Thank you, Your Honor. I would also point the court, in answer to Judge Faber's question, to the Freeman case. Freeman, again, it's an Eighth Circuit case. It's 1990. So we're not talking about something that happened decades ago. And that's how long this right has been established, Your Honor. In Freeman, the police failed to enforce a restraining order. Again, it just sits on the desk and nothing more. The only additional fact is, again, the friendship between the police and the individual. And so both in Freeman and Oken, the mere fact is the friendship. There's no further active involvement by the police, other than leaving it sit on the table. Here, they divert it away from the unit who's supposed to serve it. They give him advice about how to remain free. They conspire and agree with him not to serve him. And our allegation, and I think counsel misspoke, his allegation is that they had agreed that he would turn himself in at a later time. Our allegation is they'd agreed that he'd remain free. And I think that the record in this case will very strongly support that. And I think the emails that are in the record already do very strongly support that, because they're saying things like, don't do X, Y, or Z, or you'll force our hand to serve the warrant. The other answer to your question is the Currier case from the 10th Circuit in 01. In that case, it's a little bit further afield. Children were returned to an abusive parent. So you have Pulliam, Sloan, Oken, Freeman, Kennedy, and Currier, I think all answer the question. The oldest of those cases is Freeman from 1990. So the question's been answered for some 20 years as a clearly established right. I would suggest also to the court in answer to the question, that in addition to the clearly established nature of the state action doctrine, there is a further question in my mind anyway as to whether it's the lawfulness, if you look at the case law, of the officer's actions that has to be clearly established. In other words, that his actions were unlawful. So it is not necessarily the picayune question of the state action doctrine and whether it itself is settled, which is a question of liability. It really is a question of the lawfulness of the officer's actions. And clearly, as Judge Gregory points out, as everyone has pointed out, what he did was unquestionably unlawful. He's aiding and abetting a criminal to remain free. He's actively taking affirmative steps to obstruct justice. So I would suggest first to the court that Pinder says we don't need a case on all fours. Second to the court, that it may be that merely aiding and abetting and obstructing justice, at least in my view, are sufficient because those are clearly unlawful. And finally, that Okun and Freeman are my best two answers to your question. Second Circuit and Eighth Circuit, up to 20 years old, and the facts in those cases primarily relied on merely the friendship between the officer and the accused and the fact of leaving the warrant on the table and not serving it. So for all those reasons... But we have considered any of those cases in our deliberations here if it wasn't for Pinder's acknowledgement of the concept of the circuit. I'm sorry, the first part of your question, out-of-circuit cases, but for Pinder's recognition of the doctrine, the state actor exception. I don't think you need to because I think Pinder does recognize it. In Pinder, one of those cases, Freeman is specifically cited and it's very interesting and it's very instructive on this point. Pinder says of Freeman  or we ought not to because at the time of Pinder, the facts of Pinder came before Freeman. In other words, Freeman hadn't at that time been clearly established. And it said that, I believe, of Freeman, Gregory, and Wood, which are all cases that establish this right. So Pinder, when it got to the question of clearly established, says, well, there are these cases, they have been cited to us, they do appear to establish the state action doctrine question. But they happened either after or we ought not consider them. But in this case, now that question is right. The door is open to Freeman, to Okun, to these other concerns because we are now in a position where those cases were decided many, many years. In fact, decades in at least one instance prior to what we're here to talk about today. To answer the judge, A.G.'s question really is no, but that doesn't hurt you. That's right, yes, yes. As long as you have Pinder made very clear that there's a continuum between action and inaction. And the question is, where do we fall on that continuum in this case? In Pinder, in Castle Rock, in DeShaney, in other cases cited by the defense, the courts were always careful to point out that if we're going to rule that there is qualified immunity, it's because there's no affirmative state action. All we need is affirmative state action. Okun, Freeman, and other cases say a mere friendship between the officer and the accused and leaving the warrant on the table is sufficient. You don't need to go nearly that far because we have much more than that here. And we have much more than Pinder would require on that broad continuum. Because after all, the court in Pinder had a lot of instructive language. They said, for instance, there, the most that can be said is that officers stood by and did nothing. Certainly, that's not true here. They also said that when the state itself creates the dangerous situation that results in a victim's injury, the absence of a custodial relationship they were discussing there may not be dispositive. In such instances, the state becomes more akin to an actor itself directly causing the harm. State actors may not disclaim liability when they themselves throw others to the lines. And here we have an officer who knew this woman had a warrant out for the arrest of the accused. And he is diverting the warrant. He, in one instance, actually, and this is in the text messages, actually there's another warrant for this man. And the officer prepares a letter for him falsely saying this other warrant, not from her, is not for this particular Cleveland Williams. And wants to give him this letter so that he can carry it around as a defense when he sees other officers. So here Loy has one warrant that he's withholding from the decedent and that he pretends falsely to lose even though it's available in every squad car on the computer. And another warrant for which he provides the man a letter to show officers. And that's in the record before this court so that if the other warrant comes up he can show a letter. Mr. Hansel, would you respond? Of course, Mr. Fields did a much better job than I can do articulating his argument. So I apologize to him if I don't state it like he did. He's saying that under the Maryland law there's complete, and I believe he would say absolute discretion as to how it's served and when. So it seems like what he's saying is that even if there's a conspiracy, as long as whatever the agreement is relates to ultimately how it will be served and when, it doesn't matter. That's what I understand he's saying. So even if it's a conspiracy, he can't be arrested until when I wanted him arrested or when I wanted to serve or how. Can you respond to that? Yes, Your Honor, and I was as shocked to hear it as you were. There are three answers. The first is, even if Maryland law were as such, and I disagree and I'll get to that, even if it were, the Constitution is what we're here about and the Constitution requires more. The Constitution does not permit an officer to aid and abet a criminal. The Constitution doesn't allow an officer to obstruct justice by not just leaving that document on the table but by making sure it doesn't get served. Okay, so constitutionally, even if Maryland law were as such, I would disagree with the analysis. However, Maryland law doesn't say that. Maryland law requires officers and the language of the statute was actually cited by the defense and it's mandatory. Maryland law requires officers to act in a specific manner or time. But it does require them to make all reasonable efforts to serve warrants. The warrant on its face has words of immediacy and urgency and pre-printed instructions to the officer. But the court doesn't need to go there. The question is, does the Constitution permit this even if Maryland did, which it doesn't. So I disagree from that perspective. I also question the relevance. If Maryland tomorrow passed a statute I would disagree. Would our Constitution stand for that? And I would respectfully suggest that it would not. But neither Maryland law nor the federal Constitution permit that in the least. And I don't have the cite at my fingertips but it's actually in counsel's brief and there's mandatory language in the statute as to service. Manner and time is a different question. If this were the case that the police merely said come back tomorrow and go in to serve the warrant and do it in a courteous fashion. That's one thing. That's not what happened here. This was an active effort not merely to schedule a time and a place. And what counsel suggests that there was some schedule is not in the complaint so it's not before this court it's not anywhere else in the record. But even if there was it just isn't what we have here. We have the active suppression of that warrant the advice to him about how to avoid it the warrant squad telling him not to force our hand to serve the warrant and other affirmative actions to prevent this man basically to guarantee his freedom. And there is an agreement and it's reflected in this record and I wish I had more of a record because I haven't had the opportunity to take that position. So we have a very bare bones record. But there is an agreement between the two which is very strongly supported by this record and by certainly the complaint itself that the agreement was that he would remain free. And that leads directly to what happened with a known risk that that would happen because these are assault charges. This is a domestic abuser who had a valid assault arrest warrant and who also was going through the process and Officer Loy knew this as well with his wife she was obtaining a series of protective orders against him. And so he even says at one point on the day of the murder he texts, the murderer texts his location and instead of rushing to that location going to intercepting, arresting him Loy writes back and tells him what to do and where not to go so he doesn't get arrested and says if you do that you'll force our hand to serve the warrant. That type of proactive involvement in keeping a man free who should be in jail is not reflected in any of the cases cited by the defense and it is much worse much worse than the case law that's existed for 20 years recognizing the state action doctrine and precluding this type of meddling in the affairs of criminals and what amounts in essence at the end of the day to conspiracy with that criminal. As a result we respectfully suggest that the trial court although it was correct we respectfully ask that this court find and confirm because there is a clearly established state action doctrine in this case and it was clearly transgressed. Unless the court has any questions that's my presentation. Thank you Mr. Hansel. Mr. Fields you have time. There are some emails and texts that post-date the time the district court rendered its opinion that have been placed in the record. What's your position on our ability to consider those and the disposition of the case here? Here's what I would say your honor. Counsel is correct that I did agree at his request which was a concession based on something else that I had requested to place those items into the record. I believe they are incomplete as a matter of fact in terms of all the communications as between the parties. I'm sorry that there are other communications involving Cleveland Williams the perpetrator of the murder that reflect on the issue that they seek to hold that the purpose of those text messages for example that there are communications as between Cleveland Williams and his wife up until the time of the event. That goes to one of the issues of Pender. Pender says the State Created Danger Doctrine is one that... Before you get into that. Your position. We can use them or we can't use them? Despite the fact that I agreed with counsel's suggestion to place them in at his request I believe an incomplete record and I believe it does not provide the proper context of those communications because there are more communications made by one or more of the parties to come in. Yes, your honor. And then you put them in. Correct? The issue goes to the communications as between Cleveland Williams. There are two types of communications what I'm suggesting. The issue of what Ms. Williams was doing and how she was in danger that is addressed by other communications that were not communications between Cleveland Williams and Major Leowy. There were communications between Cleveland Williams and his wife which addressed that issue. It goes to a factual issue which places the other communications in better context. So for that reason I would say that it's an incomplete record in that... But you could have put that context in is my question. Correct?  Well, what was produced to the public... What was produced... It's a joint appendix. It is, your honor. It is, that's correct. And you certainly... You're one... You're a big part of that joint venture. Correct? Correct, your honor. And you did not profit it. That's correct. The record is what it is. But you agreed to everything that's in the joint appendix to be included as the record. That's correct, your honor. I prepared it and so that's what... So therefore we can consider it. It is in the record, your honor. It is in the appendix. The Pinder case in terms of its discussion of the state created danger states that it would be applied or could possibly be applied when the individual enhances the danger. The danger at this point or the danger at issue in this case is Cleveland-Williams as to his... As between Cleveland-Williams and his wife. That danger pre-existed Major Leoie communicating or not communicating with anybody as between Cleveland-Williams and Veronica-Williams. If... And let's take what the plaintiffs suggest in terms of the arrest on the time that Cleveland-Williams came in to the police station. We've talked about the statutory scheme in Maryland with regard to the effectuation of arrest warrants. We also have release on one's own recognizance which is exactly what happened in Pinder. So he clearly would have been entitled to bail and would have been in fact she could not have gotten the protective order that she got Veronica-Williams at the court on the day she was murdered had Mr. Williams not been given the notice of the date and time of the hearing and not had an opportunity to be present. So the danger existed. Take Major Leoie out of the equation nothing changes for Veronica-Williams in terms of the enhancement of that danger. Isn't that all information though that would have to come out at the summary judgment stage because I don't think any of that's before us now is it? Well the statutory scheme we've identified in the record is what Maryland's statutory scheme is with regard to bail and release on own recognizance. Are you saying as a matter of law that had the arrest warrant been served that he would have been out on his own recognizance that day? It is clearly more likely than not Your Honor. You're right. Now I do want to address briefly the Let me ask you one question before you get into that. Mr. Fields I ask Mr. Hansel for his best case that this was a clearly established right and he gave me a whole litany of cases. Is it your position that every one of those is distinguishable on its facts from this? Well they are. First of all they're not cases within the Fourth Circuit. The Fourth Circuit controls what is clearly established. The Reichel case speaks to that as does Lethamine v. Wiedemann the Fourth Circuit case as well as Swanson v. Powers which are all cited in our brief. That it's controlled. The fact that other circuits rule certain ways on the state created doctrine the danger doctrine doesn't compel and certainly doesn't control and doesn't direct this court. The Fourth Circuit has its own law and Pender is the only case which has addressed that state created danger doctrine and what it says is you have to be careful to not cross the line between artful pleading and affirmative acts and omissions but also be careful because where do we stop on this what action constitutes an affirmative act. I interrupt you and you wanted to make a point and I don't want to take up what's left of your time. The issue is again all those cases
judges: Roger L. Gregory, G. Steven Agee, David A. Faber